UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: DELTA STARR                    CIVIL ACTION
BROADCASTING, L.L.C.
                                      NO. 05-2783

                                      SECTION: R(3)

## ORDER AND REASONS

Appellant Vincent Bruno appeals the bankruptcy court's April 6, 2005 order dismissing the voluntary Chapter 11 petition that he filed on March 22, 2005 on behalf of Delta Starr Broadcasting, L.L.C.  Bruno asserts that the bankruptcy judge erred in determining that the petition was not properly authorized.  For the reasons stated below, the Court finds that the petition was authorized.  The Court therefore REVERSES the bankruptcy judge's April 6, 2005 order dismissing the petition and REMANDS the case to the bankruptcy judge for further proceedings.

## I.    BACKGROUND

Delta Starr Broadcasting, L.L.C. is a Louisiana limited

liability company that was, at least before March 2005, owned by appellant Vincent Bruno, appellee Michael Starr, and John Treen. Each of these three individuals held a one-third membership interest in Delta Starr.

On March 22, 2005, Bruno filed a voluntary Chapter 11 bankruptcy petition on behalf of Delta Starr. Bruno asserted that he was authorized to file the petition on behalf of Delta Starr because his action was approved by two of Delta Starr's three members (Bruno and Treen). To that effect, Bruno provided an unsworn, signed statement from Treen, dated March 21, 2005, stating that he consented to the filing of a Chapter 11 petition on behalf of Delta Starr. Two days later, on March 24, 2005, Starr filed a motion to voluntarily dismiss Delta Starr's petition, arguing that Bruno had no authority to place Delta Starr into bankruptcy. Starr asserted that, on March 11, 2005, eleven days before the petition was filed, Treen transferred his one-third membership interest in Delta Starr to RMS Holdings, L.L.C., an entity controlled by Starr, thus rendering Treen's March 21, 2005 consent to the bankruptcy ineffective. Starr also argued that, even if Treen were still a member of Delta Starr as of March 21, 2005, Bruno nevertheless lacked the authority to place Delta Starr into bankruptcy because he did not obtain approval for the filing by a majority vote at a properly-noticed

2

meeting of Delta Starr's members.

The bankruptcy court held a hearing on Starr's motion to dismiss on April 4, 2005.  At the conclusion of oral argument, the bankruptcy court granted the motion to dismiss.  The bankruptcy judge held that Bruno lacked authority to file the petition on behalf of Delta Starr because the action was not approved by formal resolution at a meeting of the members.  The court stated:

> I think that an LLC is not that much
> different from an ordinary business
> corporation, or a nonprofit corporation, in
> that to take proper corporate action for such
> a drastic step as filing for bankruptcy
> relief that they should have a meeting and a
> corporate resolution adopted in compliance
> with the pertinent Louisiana law.  And that
> wasn't done here . . . .

Transcript of April 4, 2005 Hearing at 14:21-15:3; *see also id.* at 16:11-14 ("I'm going to hold that there was no resolution and no meeting authorizing this action of filing the request for Chapter 11 relief and I'm therefore going to grant the motion to dismiss the case.").  The bankruptcy court's order dismissing the case was entered April 6, 2005.

Bruno timely appealed the bankruptcy court's April 6 order. *See In re Delta Starr Broad., L.L.C.*, No. 05-2783, slip op. at 5-9 (E.D. La. Nov. 10, 2005).  On appeal, the parties' arguments are the same as below.  Starr asserts that he is the majority

owner of Delta Starr and that, in any event, a bankruptcy filing can be authorized only by formal resolution at a properly-noticed meeting.  Bruno argues that, under Louisiana L.L.C. law, Treen's sale of his one-third interest in Delta Starr did not transfer with it Treen's membership and voting rights.  Bruno also argues that no formal meeting was required for Bruno and Treen, a majority the members, to authorize the bankruptcy filing.

On December 30, 2005, shortly after the parties briefed the substance of the appeal, Starr moved for, and was granted, leave to file a supplemental memorandum.  In his supplemental memorandum, Starr points the Court to a December 16, 2005 decision in a Louisiana state court action in which the court found that Treen has irrevocably transferred his interest in Delta Starr, including his membership and voting rights, to Starr, and that Starr is currently the majority owner of Delta Starr.  Starr attached a copy of the state court judgment to his supplemental memorandum.  Bruno responded to Starr's supplemental brief on January 23, 2006, and Starr filed a second supplemental brief on February 3, 2006.


II.  DISCUSSION

   A.  Legal Standard

On an appeal from an order of the bankruptcy court, the

4

district court reviews the bankruptcy judge's conclusions of law
and mixed questions of law and fact *de novo.  Carroll v.
Quinlivan (In re Quinlivan)*, --- F.3d ---, 2005 WL 3469702, at *3
(5th Cir. 2005) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504
(5th Cir. 2000)).  The district court reviews the bankruptcy
court's findings of fact for clear error.  *Id.*

        To determine whether a voluntary bankruptcy petition filed
on behalf of a business entity was filed with the proper
authority, the Court looks to the law of the entity's state of
organization.  *See Price v. Gurney*, 324 U.S. 100, 106 (1945);
*Berger v. Newhouse (In re Pirhana, Inc.)*, 83 Fed. Appx. 19, 21
(5th Cir. 2003).

        **B.    Treen's Membership Interest**

        The first issue the Court addresses on this appeal is
whether Treen retained voting rights in Delta Starr as of March
21, 2005, the date on which he consented to the filing of a
Chapter 11 petition on behalf of Delta Starr.  Because it found
that the petition was not properly authorized at a meeting of the
members, an issue the Court addresses below, the bankruptcy court
did not reach this issue.

        Louisiana Revised Statutes Annotated section 12:1330, part
of the Louisiana limited liability company statute, provides that
a membership interest in an LLC is assignable, but that the

5

assignee of a membership interest is not entitled to exercise any
membership rights until he is properly admitted as a member of
the LLC.  See La. Rev. Stat. Ann. § 12:1330.  Under section
12:1332, the assignee of a membership interest can become a
member of the LLC only if the other members unanimously consent
in writing.  *Id.* § 12:1332.  Unless and until the assignee
becomes a member of the LLC, the assignor continues to be the
member.  *Id.*

     Here, the parties do not dispute that Treen transferred his
membership interest to R.M.S. Holdings on March 11, 2005.  (*See*
Bankr. Rec. Doc. 5, Ex. B).  Moreover, neither of the parties
asserts that RMS Holdings was ever admitted as a member of the
Delta Starr in accordance with section 12:1332.  Rather, Starr
argues that because he controlled RMS Holdings, and because he
was already a member of Delta Starr, RMS Holdings was not really
a "new" member and was therefore entitled to exercise membership
rights.  Starr also argues that, even if he could not exercise
membership rights through RMS Holdings, he became entitled to
exercise those membership rights when RMS Holdings later
transferred Treen's membership interest to him.

     The Court finds that Treen retained his membership in Delta
Starr, including the right to vote, as of March 21, 2005.
Because RMS Holdings was never duly admitted as a member of Delta

Starr under sections 12:1330 and 12:1332, Treen continued to be a member of Delta Starr.  Starr cites no authority to support his argument that RMS Holdings did not have to be approved as a member of Delta Starr under section 12:1332 because he was its principal, and he already held a membership interest.  The Court finds that this argument is foreclosed by the plain language of sections 12:1330 and 12:1332.  Although Starr may have controlled RMS Holdings, that company is a separate legal entity, and it could not become a member of Delta Starr except as provided under section 12:1332.

The Court need not decide whether Starr later became possessed of Treen's membership rights when RMS Holdings transferred the interest to him.  The only issue before this Court on appeal is whether the bankruptcy judge erred in determining that the March 22, 2005 Chapter 11 petition was not properly authorized.  RMS Holdings did not transfer Treen's interest in Delta Starr to Starr until April 1, 2005, ten days *after* the bankruptcy petition was filed.  (*See* Bankr. Rec. Doc. 19, Ex. 1).  Accordingly, Treen was a member of Delta Starr and was entitled to vote as of March 21, 2005, the date on which he consented to the filing of the petition.  Any change in the membership of the company after that date is immaterial to whether the petition was properly authorized at the time it was

7

filed.  Accordingly, the Court expresses no opinion on whether the April 1, 2005 transfer was effective to transfer Treen's membership rights to Starr.

### C.  Authorization

As noted *supra*, the bankruptcy judge determined that Bruno's March 22, 2005 Chapter 11 petition on behalf of Delta Starr was not properly authorized under Louisiana law because it was not approved by majority vote at a meeting of the members.  Bruno argues that the bankruptcy judge erred in reaching this conclusion because Louisiana law does not require that the members of an LLC authorize actions through formal resolutions or meetings.

The default provision of the Louisiana LLC law, section 12:1318, states that "[u]nless otherwise provided in the articles of organization or a written operating agreement, each member . . . shall be entitled to cast a single vote on all matters properly brought before the members, and all decisions of the members shall be made by majority vote of the members."  La. Rev. Stat. Ann. § 12:1318(A).  The members of a Louisiana LLC may delegate decisionmaking authority over ordinary management decisions to one or more managers by including such a delegation in the articles of organization.  *See id.* § 12:1312(A).  Even when the members of an LLC have delegated general decisionmaking authority

8

to managers, however, the statute provides that certain
extraordinary decisions must be made by majority vote of the
members unless the articles of organization or a written
operating agreement expressly provide otherwise. *See id.* §
12:1318(B).  The LLC statute contains no express requirement that
member decisions must generally be made by resolution or at
formal meetings, and the parties have not pointed the Court to
any provision in Delta Starr's articles of organization or
operating agreement governing the procedural requirements for
valid member action.

      As an initial matter, the parties dispute which of Delta
Starr's members were designated as managers with the delegated
authority to make decisions concerning the management of the
company.  The Court does not decide who, if anyone, was a manager
of Delta Starr at the time the bankruptcy petition was filed
because the Court concludes that a petition in bankruptcy must be
authorized by a majority of the members, unless the articles of
organization or the operating agreement specifically provides
otherwise.  Section 12:1318(B), which provides a list of actions
that must be approved by a majority of the members of an LLC
regardless of whether the LLC has appointed a manager or
managers, does not expressly mention bankruptcy.  That section
does, however, require a majority vote to authorize, *inter alia*,

9

"the sale, exchange, lease, mortgage, pledge, or other transfer
of all or substantially all of the assets of the limited
liability company."  La. Rev. Stat. Ann. § 12:1318(B)(2).  The
provision encompasses the filing of a bankruptcy petition because
the filing of a petition necessarily results in a transfer of all
or substantially all of the assets of the company.  Under section
541 of the Bankruptcy Code, the commencement of a voluntary
bankruptcy petition creates an estate, which comprises all of the
debtor's interests in property as of the commencement of the
case.  *See* 11 U.S.C. § 541(a).  The filing of a voluntary
bankruptcy petition therefore automatically results in a transfer
of all of the debtor's assets to the bankruptcy estate.  *See,
e.g.*, *Baker Huges Oilfield Operations, Inc. v. Cage (In re Ramba,
Inc.)*, 416 F.3d 394, 400 (5th Cir. 2005) (noting that bankruptcy
filing creates an estate and an "accompanying transfer of the
property of the debtor . . . to the estate"); *McKown v. United
States Dep't of Agric.*, 276 F. Supp. 2d 1201, 1209 (D.N.M. 2003)
("When Appellants filed their bankruptcy petitions, all of their
legal and equitable interests transferred to their bankruptcy
estates.").  Accordingly, such a filing must be authorized by a
majority of the members under section 12:1318(B).

     It is beyond dispute that two of Delta Starr's three members
as of March 22, 2005, Bruno and Treen, approved the filing of the

10

bankruptcy petition.  It is also clear that the bankruptcy petition was never the subject of a resolution, meeting or formal vote of Delta Starr's members.  The controlling issue is, therefore, whether Louisiana law requires such formalities as a prerequisite to action by an LLC.

There is little case law from either state or federal courts that interprets the Louisiana LLC statute.  The parties have not provided, and the Court has not found, any case on point that applies Louisiana law.  The secondary authorities that interpret the Louisiana statute, however, emphasize that the Louisiana LLC law is much more flexible and informal than its counterpart for traditional business corporations.  *See* 8 Glen G. Morris & Wendell H. Holmes, Louisiana Civil Law Treatise, Business Organizations § 44.07 ("[T]he LLC statute does not impose corporate-style formality requirements on decision-making by the members and managers of the LLC."); 9 Susan Kalinka, Louisiana Civil Law Treatise, Limited Liability Companies and Partnerships: A Guide to Business and Tax Planning § 3.2 ("Members of an L.L.C. do not have to comply with corporate formalities.").  Those authorities assert that the legislature intended this degree of informality and that the default provisions of the LLC statute simply do not require that LLCs act through notice, meetings, formal resolutions, or many of the other procedures required of

11

ordinary corporations.  *See* 8 Morris & Holmes, *supra*, § 44.07
("None of the notice, quorum, and records-of-decisions rules that
corporation law imposes may be found in the LLC statute."); 9
Kalinka, *supra*, § 3.2 (" The Louisiana LLC Law also does not
require members or managers of an LLC to hold meetings, keep
minutes, or file annual reports, all of which are required under
the corporate provisions.").  This conclusion is supported by a
comparison between the language of the business corporation law
and the LLC law.  The Louisiana business corporation law is
explicit about notice and meeting requirements and providing
authority to act without a meeting by unanimous consent.  *See,
e.g.,* La. Rev. Stat. Ann. § 12:81(C)(7) ("A majority of the board
of directors shall be necessary to constitute a quorum for the
transaction of business, and the acts of a majority of the
directors present at a meeting at which a quorum is present shall
be the acts of the board of directors."); *id.* § 12:81(C)(6)
(providing notice requirements for board meetings); *id.* §
12:81(C)(9) ("Any action which may be taken at a meeting of the
board of directors . . . may be taken by a consent in writing
signed by all of the directors . . . and filed with the records
of proceedings of the board . . . .").  The LLC statute, on the
other hand, states simply, "Unless otherwise provided in the
articles of organization or a written operating agreement, a

majority vote of the members shall be required to approve the
following matters . . . ."). *Id.* § 12:1318(B).

If the Louisiana legislature intended to impose formal
decisionmaking procedures on LLCs, it certainly could have
included such a requirement in the statute.  Indeed, it expressly
did just that in at least one provision of the statute, which
provides that the managers of an LLC can be removed only "at a
meeting expressly called for that purpose." *Id.* § 12:1313(2).
In light of this provision, the absence of any similar
requirements elsewhere in the statute strongly suggests that the
omission was intentional.

In light of these considerations, the Court concludes that
the Louisiana LLC statute does not require that an action
supported by a majority of the members be approved at a meeting
or through a resolution.  Although parties are free to
incorporate any manner of procedural decision-making requirements
into the articles of organization of an LLC, the statute contains
no such default requirements, and the Court has found no evidence
to indicate that this was the result of legislative oversight.
Accordingly, the Court finds that the bankruptcy judge erred in
determining that the March 22, 2005 bankruptcy petition filed on
behalf of Delta Starr was not properly authorized under Louisiana
law.  The Court therefore reverses the bankruptcy judge's April

6, 2005 order of dismissal and remands the case to the bankruptcy judge for further proceedings.

## III. CONCLUSION

For the reasons stated above, the Court REVERSES the bankruptcy judge's April 6, 2005 order dismissing this case and REMANDS the case to the bankruptcy judge for further proceedings.

New Orleans, Louisiana, this __3rd__ day of February, 2006.

_Sarah Vance_
_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14